## WILLIAMS VS. PHELPS.

Where a creditor agreed to take certain property of his debtor in satisfaction of his debt, upon the faith of representations of the debtor as to its condition, and he took it under such agreement, after he had an opportunity to test their truth, *Held*, it was a good accord and satisfaction of the debt.

The law seems to be settled in England, that a contract cannot be avoided on the ground of duress of goods; but in this country, it has been held in some cases that a contract may be avoided on that ground, in the case of some peculiar and pressing necessity.

Where the only interest of the party in the property is by way of chattel mortgage to secure a debt, and the only necessity for obtaining it, is to make it available as such security, a concealment of it by the mortgagor cannot be regarded as

such duress of goods as to avoid a contract made by the mortgagor in reference thereto.

The failure of a plaintiff in whose favor a judgment was rendered in justice's court, in an action for the recovery of personal property unlawfully detained, to get possession upon an appeal taken by the opposite party, by giving the undertaking mentioned in sec. 2, chap. 112, laws of 1859, furnishes no reason why he should not recover all the damages he has sustained by the detention of the property pending such appeal. The case of *Graves v. Sittig*, 5 Wis., 209, commented on and explained.

The general rule in such actions, that interest upon the value of the property unlawfully taken or detained, is the measure of damages, is not applicable to a case where the chief benefit to be derived from it, is from its daily use; but in such cases the real damages is the value of the use of the property, and interest on its value, is not compensation.

APPEAL from the Circuit Court for *Dodge* County.

Action commenced in justices court for the recovery of a span of horses, unjustly taken and detained by the defendant, of the value of $100. Defense, a general denial, and that on the 3d day of September, 1861, *James Duran* gave to Bull & *Phelps*, of which firm the defendant was a member, notes signed by himself and one *Albert Williams*, payable at different periods thereafter, for the aggregate sum of $500, and that said *Duran* was then the owner and had possession of the horses mentioned in the complaint, and that he then gave said firm a chattel mortgage of said horses to secure the payment of the notes, and that the mortgage was filed on the following day in the town clerk's office of the town where *Duran* then resided; that afterwards and before the maturity of said notes or the taking and detention complained of, Bull & *Phelps* assigned the notes and mortgage to Aultman & Co., and that Bull & *Phelps* as their agents on or about the 1st day of January, and for them, took possession of the said horses and have detained them to satisfy said unpaid notes, in accordance with the terms of the said chattel mortgage, default having been made by the makers, which was the same taking and detention complained of. The plaintiff had judgment before the justice and the defendant appealed to the circuit court, but the plaintiff did not enter into a recognizance as required by section 2, chapter

112, Laws 1859, and the defendant filed an undertaking in accordance with section 4 of chapter 112, Laws of 1859. and also one in accordance with the provisions of chapter 120, R. S., relative to appeals. The action was tried before the court, a trial by jury having been waived. The plaintiff being sworn, proved the taking and detention of the property in question, and that it was worth about $90. He was asked what the services of the team were worth per day. The defendant objected to this question as immaterial and as attempting to prove too remote damages. The objection was overruled and the witness answered that they were worth $1 per day; that he bought the horses of *James Duran* in Minnesota, and rested. The defendant then proved substantially the matters particularly set forth in his answer as a defense, and that the said notes were given for the price of a thrashing machine, and that *Duran & Williams*, the purchasers, also gave a chattel mortgage on the machine to secure the payment of the same notes, and that *Albert Williams* gave a chattel mortgage on a span of horses and wagon for the same purpose; that $50 had been paid on said notes, and that the said *Duran & Williams* took said mortgaged property away to Minnesota without the knowledge or consent of the mortgagees, and that the defendant had been there for it. The plaintiff then proved that after the defendant *Phelps* returned from Minnesota, *Phelps* stated that he had settled with *Duran & Williams* and got the machine back again into his possession. This declaration was proved by two witnesses. The plaintiff then testified in substance that he had had a conversation with the defendant before this action was commenced, and after his return from Minnesota; that the defendant told him that while in Minnesota he saw *Duran & Williams* and that he had settled with them about the thrashing machine, and had agreed to send them their papers; that he had not sent the papers to them but would as soon as Mr. Aultman came down, and that he expected him hat day or the next; that witness wanted to buy of him the

machine, but he refused to take any less for it than it was originally sold for ; that the defendant also said, he had got an order from *Duran* & *Williams* for the machine, and had accepted the machine on the order ; that he took the machine and called it square, and that he considered the machine up there worth as much as he sold it for to them. Considerable testimony was given to show that *Duran* & *Williams* had absconded with the mortgaged property to avoid the mortgages, and some testimony was given to rebut this conclusion. The defendant then testified that after he found the machine and horses were gone, he started to hunt them up; that he went to Minnesota and found *Williams* & *Duran*; that he had an interview with them, when he was informed that the horses had been traded off, and that he inquired where the machine was and *Williams* evaded an answer; he said he had not sold the machine. *Duran* gave him to understand that the machine was where he could not find it. Defendant then asked them, if he would give them up their notes, whether they would tell where the machine was, and go with him or give him an order on the man who had it, so that he should have no trouble in getting it, and that they both answered they would. That he then said if they would direct him where the machine was and give him the order and if he found the machine in as good condition as they recommended it to be, when he got home he would send them the notes and papers. They told him the machine was in as good condition as when sold to them, excepting the natural wear and tear and all the fixings were there excepting some few, that were with them, and the sweeps that were left at Sun Prairie and that they had put in some new ones, and the spring to the separator was broken, but thinks they told him they had got a new one. Then Blount and Craig came in and the whole matter was stated over and *Williams* & *Duran*, gave me the order. I told them if I found the machine all right I would send the papers when I got home. The defendant then testified that the machine was injured in other respects than

stated by *Williams & Duran* and that he went to a man that he supposed was responsible and left the order and copy of the mortgage and told him to go and take the machine, to take it any way he could get it, if he could use the order to use it, if he could use the mortgage to use it, and that he had since been informed by him that he taken possession of the machine. This was the only way I had been successful in getting anything. I had tried in every way that I could think of. The defendant admitted that the conversations sworn to by the plaintiff's witnesses as having taken place after his return, took place, and the conversation sworn to by the plaintiff with him, except that he said he did not tell the plaintiff that he accepted the machine on the order, but told him in substance what he told the man he left the order with, and that he never made any arrangement with *Duran & Williams* except as stated by him. David Blount, on the part of the defendant, testified that he was present when *Williams & Duran* had their conversation with the defendant, in Minnesota, and that the defendant told them, he would take the machine and send them their papers, if the machine was as they recommended it.

The circuit court found for the plaintiff and among other things that the defendant had accepted the machine in full satisfaction of the claim against *Williams & Duran*. That the value of the property was $90, and the damages for detention at $1 per day was $96. These findings were excepted to by the defendant. Judgment was entered on the finding for the plaintiff in due form and the defendant appealed.

*Smith & Ordway*, for appellants.

1. The promise of the defendant to send the papers to *Duran & Williams* was voidable. Where money is obtained from any one by extortion, imposition or taking an undue advantage of a party's situation, an action may be maintained to recover back the amount so paid. 1 Cow. Treat. 147, 153, 159; *Shaw vs. Woodcock*, 7 Barn & Cress 43; 1 Pars. on Cont. 321 note E; *Thomas vs. McDaniel*, 14 Johns 185. 2. The

promise to cancel the notes and mortgage was void on the technical ground of duress of goods. 1 Pars. on Cont. 320, 321, note E; *Sasportas vs. Jennings*, 1 Bay 470; *Collins vs. Westbury*, 2 Bay 211. 3. The judgment of the circuit court is oppressive and inflicts a rule of damages wholly unsupported by authority. The damages recoverable by the plaintiff are for the detention of the property, and interest on its value is ordinarily the measure. Sedg. 502; *Graves vs. Sittig*, 5 Wis., 219; *Morris vs. Baker*, 5 Wis., 389. 4. The respondent by § 2 chap. 211, Laws of 1859 was authorized to take possession of the property on filing an undertaking; not availing himself of this provision he cannot have damages for detention from the time when he could have got possession of the property by this means.

*Edward Elwell*, for the respondent, argued that the evidence showed an accord and satisfaction of the notes and mortgage, and that the value of the use of the property during the time it was detained, and not interest on its value, was the true rule of damages.

*By the Court*, PAINE, J. The evidence fully sustains the finding of the circuit judge, that the defendant "accepted the machine in full satisfaction of his claim."

The counsel for the appellant urged that as the machine was not found in as good condition as represented, that was a good reason for the defendant's refusing to take it in satisfaction of the debt as he had agreed, but that he might still take it by virtue of his chattel mortgage. However this might be, the proof shows that he did take it under the agreement, thereby affirming it after he had an opportunity to test the truth of the representations as to its condition. This fully appears from his conversations with several of the witnesses after his return. The only question then is, whether he can avoid his contract by reason of duress of goods.

The law seems to be settled in England, that a contract can-

not be avoided upon that ground.   Parsons on Contracts, vol. 1, p. 320, note E, and cases cited.   It is true some cases are referred to in this country, which have held that under some circumstances a contract might be so avoided.   But upon examination it will be found that there was some peculiar and pressing necessity for the claimant to have the particular property.   And in the absence of some such unusual circumstances, the general rule in this country is undoubtedly as it is held in England.   And where the only interest in the property is by way of a chattel mortgage to secure a debt, and the only necessity for obtaining it is to make it available as such security, a concealment of it by the mortgagor cannot be regarded as such a duress of goods as to avoid a contract by the mortgagee.   It is true that a desire to collect a debt constitutes a strong motive for a man to make a contract which he believes to be the only method of securing that end.   But the law does not deem it sufficiently strong to overcome the freedom essential to the validity of contracts, and to enable a party to avoid such as he has been induced by such a motive to enter into.

It is urged that the court below erred in allowing as damages for the detention, the value of the use of the horses down to the time of trial, and that the true rule would have been to have allowed interest on the value of the property.   It is said, first, that the plaintiff should be allowed no damages for the detention after the time when he might, by giving the undertaking provided for by section 2, chap. 112, Laws of 1859, have obtained possession ; and next, that the damages for such time as he was entitled, should have been only interest on the value. To support these two propositions, the case of *Graves vs. Sittig*, 5 Wis., 219, is relied on.   It sustains neither.   The law upon which that decision was made, was entirely different from chapter 112 above referred to.   It provided, as is stated in that opinion, that the plaintiff must give the bond as a prerequisite to the prosecution of his action.   If he did not, the property remained with the officer and not with the defend-

ant. It was very reasonable, under such a law, to say that if he neglected to give the bond when he ought to, he should not recover damages for such time as the property might thereafter remain in the officer's hands. But under the act of 1859, it was left at the option of the party in whose favor the judgment was given by the justice, to get possession by giving the prescribed undertaking, or not. And in case he elected not to do so, the possession was delivered to the other party. This change enables one who might be unable to give such se-security, still to litigate for his rights, and if successful in the end, the fact that he could not give the requisite security to obtain the most speedy possession of his property, furnishes no reason why he should not be allowed to recover all the damages sustained by the other party's insisting on its wrongful detention.

Neither is the general rule, stated in that case, that "interest upon the value of the goods unlawfully taken, ordinarily form a proper measure of damages," applicable to a case where the chief benefit to be derived from the property is from its daily use. It would seem absurd to say that one might wrongfully take a span of horses belonging to another, of the value of $200, detain and use them for a year, and then get clear by paying fourteen dollars damages, that being the interest on the value. Every one can see, that the real damages is the value of the use, and that interest on the value of the property would be no compensation whatever in such cases.

The judgment is affirmed, with costs.