SMITH, *Appellant*, v. BUNN.

1. **Homestead.** The right of homestead ceases to exist when the occupant, with a view to acquiring a residence elsewhere and with no fixed purpose of returning, ceases to occupy the premises as a residence. Intention to return, in order to preserve the right, must be formed at the time of removal; in order to restore it when once lost, must be executed by actual resumption of occupancy.

2. ———: CASE ADJUDGED. S. having lost his wife broke up housekeeping, moved his household goods, leased his farm and went elsewhere to live. Several years afterward he re-married and within three weeks died. At the time of his death he was preparing to return to his former home, but had not done so, the tenant being still in possession. *Held*, that his widow was not entitled to homestead.

*Appeal from Cape Girardeau Court of Common Pleas.*—HON. HAMILTON G. WILSON, Judge.

REVERSED.

*R. Burrett Oliver* for appellant.

*Wilson Cramer* for respondent.

HENRY, J.—This is an action of ejectment for eighty acres of land. The plaintiff is sole heir of Isaac Smith, deceased, who it is admitted, died seized of the land, and defendants derive their title from the same source, claiming under a deed executed after the death of Isaac Smith by his second wife, who claimed the land as a homestead. Smith purchased the land in 1858, and lived on it until the death of his first wife, mother of plaintiff, which occurred in 1861 or 1862, as plaintiff's witnesses testified, or in 1864 or 1865, as Mrs. Noble, the second wife, testified, when he broke up housekeeping, moved his household goods from the premises and leased them to one Masterson, who was still occupying the premises when Smith died, which occurred three or five years after the death of his first wife, and within three weeks after his second marriage. He never resided on or occupied the premises after the lease to Masterson, but lived a part of the time with his father-in-law, and a part of the time with Jack Hitt, and, at his death, with David Smith. After his second marriage he was making preparations to move to the premises in question. There is no evidence that he said or did anything indicating, either an intention to abandon his homestead or return to it, when he leased to Masterson, except what may be inferred from the above facts, and the question presented is, did his conduct amount to an abandonment of the homestead? If it did, the judgment must be reversed, otherwise the judgment was for the right party.

In most of the cases in which it has been held that ceasing to occupy the premises was not an abandonment of the homestead, there was evidence of an intention of the occupant to return, either consisting of his declarations to that effect, made at the time of his removal, (*Wiggins v. Chance*, 54 Ill. 175,) or of the retention of apartments in the dwelling-house and storing household goods therein. *Potts v. Davenport*, 79 Ill. 455. Some of the cases go further and hold that, until another homestead is ac-

quired, the old one is not abandoned, and this was adjudged in *Mills v. Von Boskirk*, 32 Texas 360, although the claimants left the county in 1865, being dissatisfied with it, declaring that they did not know that they would ever return, and the premises were attached in 1867, claimants not having yet returned.

But in *Davis v. Andrews*, 30 Vt. 679, the claimants of a homestead left the premises in October, 1858, and were living in another house, a mile and a half distant from the premises claimed. The plaintiff, Davis, had leased the latter for five years from the 1st of April following, and contemplating a sale of the premises, reserved the right to terminate the lease at the end of one year, in case he should sell within that time. Judge Poland, delivering the opinion of the court, said : " It is not true, that every temporary absence from home, would authorize creditors to take a man's homestead, or authorize him to convey it, to bar the right of his wife, but an abandonment of it as a home, and setting up another, we think, would have that effect. It may frequently become a nice question whether the absence is of such a temporary character and purpose that the home, or domicil, still continues, or whether it is changed to another place, and so lost to the first, or not, but when it is made clear that the residence and home of the family has been changed, the right of homestead in the old residence is changed. It is not enough that the housekeeper may still have the legal possession of the old or former homestead, so that he could maintain trespass for an injury to it. The question is, Does he occupy the homestead, does he live and have his home there?"

In the *Matter of the Estate of John Phelan*, 16 Wis. 80, the facts were that the deceased moved from the premises, in which his widow claimed a homestead, in 1854, and never resided there afterward, but rented them to several tenants and moved to a house on another street in the same town, with a view to doing a better business, but his widow testified that he always claimed the premises

36—75

in controversy as his homestead, and intended to move back again and occupy them as such. The supreme court decided against the widow's claim, and observed that: "When the owner of a house and lot voluntarily removes from it, and takes up another residence in the same town, not from any temporary necessity, for the purpose of repairing the homestead or otherwise, but with a view to the more convenient transaction of business elsewhere, renting the old home to other parties, it can no longer be said to be his homestead, and a vague intention to return perhaps at some future time and reside there again, would not make it such." The court also remarked that: "When the residence was actually changed and the old house rented for hire, the exemption ceased, because the homestead ceased."

Our statute is not materially different from those of the states of Vermont and Wisconsin, in the section which secures to a housekeeper, or head of a family, a homestead. It provides that: "The homestead of every housekeeper, or head of a family, consisting of a dwelling-house,     *     *     which is, or shall be, used by such housekeeper, or head of a family, as such homestead, shall, together with     *     *     , be exempt from attachment and execution." Other sections of the statute secure the homestead to the family after the death of its head. There is no homestead right where there has been no occupancy of the premises claimed, and it ceases to exist when the occupant ceases to occupy it as a residence, with a view to acquiring a residence elsewhere, and with no fixed purpose of returning to the former, and when once abandoned, "the intention to return by which the homestead rights are preserved, must be formed at the time the removal occurs. It can have no influence whatever in restoring the right once lost by actual abandonment until executed by an actual resumption of occupancy." Thompson on Homesteads, § 267.

There have been numerous adjudications on the subject

in our sister states, but it is impossible to harmonize them, and a review of the cases would make this opinion interminable, without adding materially to its value.

The facts here made out a *prima facie* case of abandonment, and in the absence of evidence showing that Isaac Smith's removal from the premises was only temporary, and that he intended to re-occupy them at the expiration of the lease, he must be held to have abandoned them as a homestead. *Austin v. Stanley*, 46 N. H. 51; *Davis v. Andrews*, 30 Vt. 678; *Spaulding v. Crane*, 46 Vt. 298; *Phelan's case*, 16 Wis. 82. The judgment is reversed and the cause remanded. All concur.