| 92 | 647 |
| 97 | 79 |
| 97 | 186 |
| 92 | 647 |
| 99 | 135 |
| 99 | 549 |
| 92 | 647 |
| 112 | 411 |
| 112 | 655 |
| 92 | 647 |
| 114 | 156 |
| 114 | 444 |
| 92 | 647 |
| 124 | 46 |
| 92 | 647 |
| 88a | 430 |

KAES *et al.*, *Appellants*, v. GROSS *et al.*

1. **Homestead.** A person cannot, lawfully, have two homesteads at the same time.

2. ———— : ABANDONMENT : INTENTION TO RETURN. Where a homestead is abandoned, the intention to return to it, by which the homestead rights are preserved, must be formed at the time the removal occurs. The intention to return can have no influence whatever in restoring the right once lost by actual abandonment, until executed by an actual resumption of occupancy.

3. ———— : ———— : ————. A subsequent unexecuted intention to resume possession would not have the effect to restore the right to hold the homestead exempt. If the right be once lost, and possession of the homestead be again resumed, such resumption of possession will only have the effect of giving origin to a new homestead right, bearing date from the new occupancy, and having no retroactive validity on the old right lost by abandonment, and possessing no force against the rights of third persons, acquired in the *interim* between the loss of the old and the acquisition of the new right.

4. ———— : ————. The removal of a family from the homestead constitutes a *prima facie* case of abandonment, and raises a presumption against the claim of homestead which must be rebutted before the claim of homestead can be successfully asserted.

5. ———— : ————. Although abandonment is a question of fact, and each case rests upon its own peculiar circumstances, yet actual removal from the homestead, with no intention to return, amounts to a forfeiture of the right, as against creditors and purchasers, although no new homestead be acquired.

6. ———— : ———— : ACQUISITION OF NEW HOMESTEAD. Removal from the homestead, coupled with the acquisition of a new home by the claimant elsewhere, is conclusive proof of abandonment.

7. ———— :. ABANDONMENT BY WIDOW AFTER REMARRIAGE. Where a widow, who, with her minor children, resided upon a homestead, remarried and moved with her family and household goods to the home of her second husband, without any intention of returning, such removal constituted an abandonment of the homestead.

8. ———— : ———— : PRESUMPTIONS. Such widow, after her remarriage, was as fully competent to form and execute an intention of abandoning her homestead as though she had remained unmarried. And she would be as fully affected by the usual unfavorable presumptions attendant on removal and prolonged absence from her old homestead, and be equally bound to overcome such presumptions, in order to successfully assert her homestead right, as would any other person whatsoever.

9. ———— : DEVISES. Section 2693 of the Revised Statutes expressly excepts the homestead out of the laws relating to devises, and it is out of the power of the husband, by his will, to put his wife to her election in regard to her homestead. (Overruling *Davidson v. Davis* 86 Mo. 440).

10. **Homestead, Power of Husband to Devise.** It is out of the power of the husband to devise the homestead as much so as by his sole deed to convey or mortgage it.

11. **Dower, Devise in Lieu of.** Where a wife accepts a devise of real estate by her husband she is barred of dower in any real estate of which he died seized, unless it is otherwise declared in the will.

*Appeal from Franklin Circuit Court.*—HON. A. J. SEAY, Judge.

AFFIRMED.

*J. C. Kiskaddon* for appellants.

(1) A devise of real estate does not deprive a widow of her homestead. *Meech v. Meech*, 37 Vt. 419; *Aikin*

Kaes v. Gross.

*v. Geiger*, 52 Ga. 407.   (2)   The will in the case at bar does not deprive the widow of either dower, or homestead. *Rose v. McHose*, 26 Mo. 590 ; *Richardson v. Richard-son*, 49 Mo. 29 ; *Pierce v. Ridley*, 25 Am. Rep. 769 ; s. c., 1 Baxt. (Tenn.) 145 ; *French v. Davies*, 2 Ves. jr. 572 ; 1 Roper, Hus. and Wife, 587 ; *Ellis v. Lewis*, 3 Hare, 300 ; *Pitts v. Snowden*, 1 Bro. C. C. 292n ; *Pearson v. Pearson*, 1 Bro. C. C. 292 ; *Foster v. Cook*, 3 Bro. C. C. 347 ; *Greatorex v. Carey*, 6 Ves. 615 ; *Dawson v. Bell*, 1 Keen, 761 ; *Harmson v. Harmson*, 1 Keen, 765 ; *Strahan v. Sutter*, 3 Ves. 249 ; *Jackson v. Churchill*, 7 Cowen, 287 ; *Church v. Ball*, 2 Denio, 430 ; *Hamilton v. Buck-walter*, 2 Yeates, 389.   (3)   The widow can only abandon her homestead by acts and declarations constituting an estoppel *in pais*.   *Seek v. Haynes*, 68 Mo. 13.   (4) There is no evidence of any such abandonment in the case at bar.   (5)   If an administrator pays off a mortgage with the proceeds of administration sale of real estate, the widow is entitled to dower and homestead.   *Jones v. Bragg*, 33 Mo. 337 ; *Atkinson v. Stewart*, 46 Mo. 510.

*T. A. Lowe* for respondents.

(1)   The will of Hufschmidt passed the real estate on the corner of St. Louis street and Adelaide avenue to his wife, the appellant, Emilie, and the devise was in lieu of dower therein, unless the testator, by his will, otherwise declared.   R. S., sec. 2199 ; *Gant v. Henly*, 64 Mo. 162, and authorities cited.   The testator did not otherwise declare.   (2) And in such case the wife shall not be endowed, unless she shall file her writing in the probate court within the time, and duly executed in the manner provided by law that she will not accept the provisions made for her by such will.   R. S., sec. 2200 ; 1 Bish. on Married Women, sec. 439, p. 307.   The appellant, Emilie, did not at any time file any such writing.   (3) The wife cannot take both under the law and the will at the same time.   *Daugherty v. Barnes*, 64

Mo. 159 ; *Gant v. Henly*, 64 Mo. 162, and authorities cited ; *Brant's Will*, 40 Mo. 277 ; 1 Bish. on Married Women, secs. 378, 433, 439. Especially where the dower would be inconsistent with the legal effect and operation of the will. 1 Bish on Married Women, sec. 436. And one cannot reject part and adopt part of a will. *Ib.* sec. 445 ; *Davidson v. Davis,* 86 Mo. 440. (4) And whether her election to take under the will barred her of dower or not, she is not entitled to dower, at least until the mortgage lien is discharged, and the respondent's money having redeemed the mortgage, he is entitled to an equitable lien upon the property until she reimburses him. 1 Washburn's Real. Prop. [3 Ed.] p. 216, sub-divs. 21, 22, p. 216, and sub-div. 25, p. 240. (5) The will of Hufschmidt was properly received in evidence. The intent of the testator must be interpreted from the entire scope of the will taken together, from which it is plain in this case that the testator intended the devises of money and the realty to be in lieu of dower. *Brant's Will*, 40 Mo. *loc. cit.,* 278, and authorities cited. (6) All the money and other personal property had been appropriated by the appellant up to the time that the administrator, with the will annexed, took charge of the estate. The personal estate must first be exhausted, then resort can be had to the real estate. *Brant's Will, supra.* And if the personalty be appropriated or exhausted and the realty devised for that purpose be insufficient to pay the debts of the deceased, then other real estate devised for other purposes can be sold for the payment of such debts. *Shaw v. Nicholay,* 30 Mo. 100, cas. cit. 107.

SHERWOOD, J.—The object of this suit is the assertion of a homestead and dower right on the part of Emilie Kaes, in certain property in Pacific, Franklin county, Missouri, on the corner of St. Louis street and Adelaide avenue, estimated to be worth from four thousand to six thousand dollars.

The petition was filed April 25, 1883, and the trial occurred May 30, 1884. On June 23, 1874, Gustavus Hufschmidt, with his family, lived on the property in question as his homestead. On the date last mentioned, Hufschmidt and his first wife executed and delivered to Franklin county their school mortgage, conveying said property to secure the payment of the sum of about one thousand dollars. His first wife bore him several children, who, with one exception, are still minors. She died, and on the fourth of August, 1875, Hufschmidt married Emilie, the plaintiff, by whom he had two children, one of whom is yet living ; they, the children of the first and second marriages, and Hufschmidt and wife, all continued to live at the homestead, till September, 1879, when Hufschmidt died, having shortly theretofore made his will, as follows :

"1. I give and bequeath to my beloved wife, Emilie L. Hufschmidt, the 'life insurance,' which I have in the orders of the 'Odd Fellows' and 'Free Masons,' in the state of Missouri.

"2. I give and bequeath to my beloved wife, E. L. Hufschmidt, the use and income of my house and property, on the corner of St. Louis street and Adelaide avenue, in the town of Pacific, county of Franklin, and state of Missouri, so long till the youngest of the children of my first wife, Amelia Hufschmidt, deceased, shall become of age, or when the said children of my first wife, deceased, can agree with my beloved wife, Emilie L., to sell the aforesaid property, including the house.

"3. After such sale, the whole amount so realized shall be divided into eight equal shares or parts, so that each of the seven children left by my first wife, deceased, viz : Frank, Emma, Otto, Fritz, Augusta, George, and Alice, and Louisa, the only child with my present wife, shall receive one share or part. Should, however, any of these die before such division is made, without

leaving any heir or heirs, then the amount shall be divided into so many shares, or parts as are left.

"4. For the use and income of the aforementioned property, house and lot, on St. Louis street and Adelaide avenue, Pacific, Missouri, my beloved wife shall pay the interest of my debts, and keep the premises in good order, and raise the minor children until they become of age; but for this she shall have also the use of all the furniture.

"5. All of my other real estate, consisting of six lots and house, in W. C. Ink's addition to Pacific, and a tract of land of thirteen and twenty-five hundredths acres, between the Missouri Pacific railroad and Brush Creek, in Keathy's addition to the town of Pacific, Missouri, my beloved wife shall sell to the best advantage, to settle and pay my contingent debts.

"6. Emilie L. Hufschmidt, appointed sole executrix. Dated July 29, 1879."

This will having been probated, Mrs. Hufschmidt, the executrix, declined in writing, in proper manner, to execute the will, whereupon William Meyersick was granted letters testamentary with the will annexed. From the life insurance policies thus bequeathed her, and rents of the premises, Mrs. Hufschmidt received about forty-five hundred dollars in cash, and some three hundred and eighty-five dollars worth of household goods and furniture, as well as enjoyed the house rent free, till August 20, 1880, when, wearying of widow's weeds, she married her co-plaintiff, Phillip Kaes, and on the second day afterwards removed with her family of minor children, and newly-wedded *conjux*, to his house in St. Louis county, where she continuously lived up to the time of the trial, having taken with her most of the beds and other furniture—selling a portion of it and leaving the rest with an adult son of her husband by his first wife, who had occupied the house with her

and who afterwards sent to his step-mother a portion of the goods thus left in his care.

The testimony of Mrs. Kaes, as to her intention in removing, is expressed in this language: "I did not leave any of the goods there for the purpose, or with the intention of returning; had no special intention of returning when I left. I still live in St. Louis county with my husband; do not wish to occupy this property with my husband, and live in it. I can't say that I do intend to return to it, and don't say that I do not; can't say that I would occupy the property should Mr. Gross give me the privilege; I would have to see Mr. Kaes first. I don't want rent; I want Mr. Gross to pay me that what I claim as my homestead. I do not know how much it is; I have not made the calculation."

About four thousand dollars, including the school mortgage debt, was proved and allowed against the estate of Hufschmidt, after Meyersick took it in charge; and he, after selling some other lands, obtained a general order for the sale of the land in dispute, as well as two other lots for the payment of debts, and at the first sale, in June, 1881, the property was struck off to Mrs. Kaes for seventeen hundred and twenty-five dollars, but this sale being disapproved, the administrator sold the property mentioned for thirty-eight hundred dollars, in September, 1881, which sale was approved by the court, and a deed was made to defendant Gross, March 10, 1882, who thereupon took possession of the property and leased portions of the same to his co-defendants. Meyersick, the administrator, having paid off the unsecured debts with the money thus realized, satisfied the school mortgage aforesaid, and had it so entered on the record.

At the close of the evidence, the court refused, on the request of plaintiffs, to give a declaration of law in these words:

"If the court believes, from the evidence, that Gus-

tavus Hufschmidt, in his lifetime, was a housekeeper and head of a family, and that the plaintiff, Emilie Kaes, was his wife, and that, together with their children, they occupied and resided upon the premises described in the petition as being at the corner of St. Louis street and Adelaide avenue as their home, and that, while so occupying and residing upon said premises, the said Gustavus Hufschmidt died, then a homestead in said premises, instantly, upon the death of said Hufschmidt, vested in the plaintiff for life, and the court will so find ; and the defendants have introduced no evidence in this case tending to defeat said claim.''

And gave, at the instance of defendants, the following declaration :

''Although the court, sitting as a jury, may find from the evidence that Gustavus Hufschmidt was, in his lifetime, a housekeeper, and head of a family, and that the plaintiff, Emilie Kaes, was his wife, and that, together with their children, they occupied and resided upon the premises described in the petition as being on the corner of St. Louis street and Adelaide avenue, as their house, and that while so occupying and residing upon said premises, the said Gustavus Hufschmidt died, yet, if the court shall further find, from the evidence, that about the twenty-fifth day of August, 1880, the plaintiff intermarried with one Philip Kaes, and immediately removed with her said husband to his homestead in St. Louis county, taking with her all her household goods, beds, bedding, and furniture, and that she left said property and home of her former husband with no intention of returning thereto, and ever since she removed to the homestead of her second husband she has continued to reside thereon with him, and did, at the time of the commencement of this suit, and does now, reside with him on said new homestead, then she abandoned said homestead of her first husband, Gustavus Hufschmidt ; and if the court shall further find

that William Meyersick became administrator with the will annexed of said Gustavus Hufschmidt, after the said abandonment, and sold said old homestead for the payment of debts, and conveying the same by proper deed of conveyance to the defendant about 1883, and that he went into possession and now occupies said premises under said sale and purchase, then the judgment should be for the defendant."

I. If the declaration of law which the court gave was correct, it is quite unnecessary to examine any other points in this case, so far, at least, as a homestead right is concerned. It is quite certain that Mrs. Kaes acquired a new homestead at the domicile of her present husband. It is equally certain that she could not lawfully have *two homesteads* at the same time any more than she could lawfully have *two husbands* at the same time. And it is said that "the intention to return, by which the homestead rights are preserved, must be formed at the time the removal occurs. It can have no influence whatever in restoring the right once lost by actual abandonment until executed by an actual resumption of occupancy." And a subsequent unexecuted intention to resume possession would not have the effect to restore the right to hold the homestead exempt. If such right be once lost, and possession of the homestead be again resumed, such resumption of possession will only have the effect of giving origin to a new homestead right, bearing date from the new occupancy, and having no retroactive validity on the old right lost by abandonment, and possessing no force against the rights of third persons acquired in the interim between the loss of the old and the acquisition of the new right.

And it has been ruled, by a court very liberal in the preservation of homestead rights once acquired, that the removal of a family from the homestead constitutes a *prima facie* case of abandonment, and raises a pre-

sumption against th. claim of homestead, which must be rebutted before such claim can successfully be asserted, *ex. gr.*, that the removal was only temporary in its nature, for some specific purpose, and with the coincident intention of re-occupancy. And while the law does not intend that the homestead shall be converted into a *prison*, by making the continuous personal occupancy of the premises the absolute basis upon which the homestead right is dependent, yet it cannot be doubted that the length of time that the claimant is absent from his *locus in quo* will constitute an important factor, in connection with other circumstances, in determining whether the aggregate result of all the facts is sufficient to establish that a forfeiture of the acquired right has occurred, by reason of abandonment. Prolonged absence from the homestead, like a removal of the family, is sufficient to cast the *onus* of rebutting the presumption of abandonment on the claimant of the homestead. Though the authorities generally agree that abandonment is a question of fact, and that each case rests upon its own peculiar circumstances, yet, for the most part, they agree that actual removal from the homestead, *with no intention to return*, amounts to a forfeiture of the right as against creditors and purchasers, although no new homestead be acquired. There is one act, however, on the part of the claimant, whereby the allegation of abandonment may be conclusively proved, and that is removal coupled with the acquisition of a new home elsewhere. The positions here taken are abundantly supported by authority. Thomp. on Homesteads, secs. 259, 265, 267, 272, 279, 285; *Smith v. Bunn*, 75 Mo. 559.

Summarizing the facts in this case, we find a homestead right acquired, and, after such acquisition, the death of the husband; the remarriage of the wife; the almost immediate removal of herself, children, and household goods to the home of her present husband, in

Kaes v. Gross.

another county, where they have continuously resided ever since, a period of nearly four years at the time the trial occurred, and that Mrs. Kaes, when so removing, had no "special intention of returning." If Mrs. Kaes had been *sui juris*, at the time the removal from the old homestead occurred, there could be no room to doubt that the usual rule, as to the *animus revertendi* at the time of removal, should dominate as well in her case as in any other. *Wright v. Dunning,* 46 Ill. 271.

I find no authority in point, and this case is one of first impression as to the effect of the removal of a widow who has remarried, and, with her family and household goods, has removed, without intention of returning; but, inasmuch as, in regard to a homestead, a widow, with a family, as in this case, cannot alienate the homestead; inasmuch as, between herself and her children, it is indivisible, and must so remain till the youngest child becomes of age; inasmuch as such homestead is not subject to the laws relating to devises; inasmuch as a widow, thus circumstanced, could not, if she would, by joining with her second husband, convey the homestead away; and inasmuch, in consequence of all these matters, she is, in so far as concerns her homestead, independent of her recently married husband, I can discover no sound reason why intention, or lack of intention, of removal should not count for as much where she remarries as where she remains unmarried. This must be so, or else it must be true that a widow, by remarrying, and thus *creating her own disability*, could remove from her old homestead, and, being incapable of forming any intention in regard to abandonment, could have that question *indefinitely postponed*, and she be at liberty, after a lapse of many years, to resume possession of her old homestead, regardless of whatsoever rights may meanwhile have intervened. It seems to me that the whole reason and policy of the law, in regard to

homesteads, and in regard to the speedy settlement of estates, forbid any such construction. Such a construction would convert what a benignant law has designed for a *shield* into a *sword*. I am, therefore, of opinion that a *femme*, situated as was Mrs. Kaes, was as fully competent to form and execute an intention of abandoning her homestead as though she had remained unmarried. Moreover, as her remarriage and removal were almost concurrent acts, it is not an unreasonable inference that she formed the intention of abandonment of her old homestead, prior to the time that she became, for the second time, a worshiper at the shrine of Hymen.

And, for like reasons as those already given, I do not see why Mrs. Kaes should not be as fully affected by the usual unfavorable presumptions attendant on removal and prolonged absence from her old homestead, and be equally bound to overcome such presumptions, in order to be successful, as would any other person whatsoever. Nor do I see why the effect of her acquisition of a new homestead, at the residence of her second husband, should not be as conclusive upon her as it would be in any other case ; for, certainly, the whole theory of the law is repugnant to the idea of *two* homesteads being in existence at the same time. Thomp. on Homesteads, sec. 279 ; *Smith v. Bunn, supra.* And that law apparently makes no distinction, and is no respecter of persons, in this regard, whether laboring under, or free from, the fetters of coverture. If Mrs. Kaes be not thus concluded, by her acquisition of a new homestead, then it would follow, leaving out of consideration the questions of intention and prolonged absence, that, though she has not lost the old, yet she has gained a new, homestead, and is now the fortunate possessor of homestead rights *in duplicate*, which is an impossible supposition. For these reasons, I am of the opinion that the trial court correctly refused the declaration of law asked by plaintiffs and correctly gave that asked by defendants.

II.   I have purposely refrained from discussing the question of the effect of the will on the homestead, and have made this case turn on the points set forth in the preceding paragraph.     My reasons for doing so are these :   I am persuaded *that the will has no bearing on this case.*   Section 2693, Revised Statutes, expressly excepts the homestead out of the laws relating to *devises.* This exception is in marked contrast to the provisions respecting *dower* in real estate ; for there, when the husband, by will, passes any real estate to the wife, "such devise shall be in lieu of dower out of the real estate * * * whereof he died seized, * * * unless the testator, by his will, otherwise declared."   R. S., sec. 2199.   And section 2200 required the wife, if she refuses to take under the will, to file her renunciation within twelve months from the probate of the will.    There is no such provision respecting renunciation or election as to a homestead ; and, as already seen, it is entirely beyond the power of the husband to devise the homestead, as much so as by his sole deed to convey or mortgage the homestead.   R. S., sec. 2689.

As the law excepts the homestead out of the law of devises, it is not to be presumed that the husband, in this case, intended to go counter to express statutory provisions, and if he did, *his will* must yield to the *will of the legislature.* The very fact, standing alone, that the legislature has made no provision for election or renunciation regarding a homestead, is very strong evidence, indeed ; but where this fact is coupled with the other, already noted, that the homestead is excepted out of the law of devises, they form, as I think, a conclusive argument against the power of the husband, by his will, to put his wife to her election in regard to her homestead.   Reasoning thus, I am of the opinion that the case of *Davidson v. Davis,* 86 Mo. 440, which lays down a rule contrary to the views here expressed, should not be longer followed, as the effect thereof is to nullify the statute.    To

illustrate this idea, in a very pointed way, take the case of a widow left with a family of minor children ; and for her benefit, provision has been made by will ; she accepts the provisions of the will, and still remains with her children in possession of the homestead. Her children, being minors, cannot assent to anything, and cannot be ousted, and so the widow, notwithstanding the case cited, takes both, under the will and under the law. This illustration, in my opinion, shows the utter fallacy of the reasoning of the case cited.

III.    Touching the question of dower, it is settled adversely to the contention of plaintiffs, by the will, by the statute already cited, and by numerous decisions of this court. *Dougherty v. Barnes*, 64 Mo. 159 ; *Gant v. Henly*, 64 Mo. 161.

The judgment should be affirmed. As to paragraph II., Norton, C. J., expresses no opinion, and he and the other judges concur on all the other points.