# NEW MADRID BANKING COMPANY, Appellant, v. BROWN et al.

### Division One, November I9, 1901.

1. **Homestead: SALE: REINVESTMENT.** The homestead law allows the sale of the homestead and the investing of the proceeds in another, and permits the carrying of the exemption of the first into the second.

2. **———: ABANDONMENT: REMOVAL TO TOWN TO EDUCATE CHILDREN: SICK WIFE.** Where the removal of the homesteader into another county was induced by consideration for his sick wife and to obtain better school facilities for his children, and ever afterwards until he sold the homestead and invested the proceeds in a new homestead he claimed the same as his home and intended to return thereto at some future time, then he acquired the same homestead rights in the latter property that he had in the first, and the latter could not be sold to pay debts contracted before he acquired it.

3. **———: ———: QUESTION OF FACT.** Whether or not there was an abandonment of the first property as a homestead before it was sold, is a question of fact, and if the evidence is conflicting on the point, and if believed might have supported a finding either way, this court will defer to the finding of the trial court.

4. **———: SALE: REINVESTMENT: DEED TO CHILDREN.** One who sells his homestead and invests the proceeds in another, which, to hinder and delay his creditors, he has deeded to his minor children, does not thereby lose his homestead therein, if on purchasing the same he moves upon and occupies the same with his family. As he had the

legal right to exchange one homestead for another, it is immaterial what his purpose was in putting the title in his children.

5. ———: ———: TITLE ACQUIRED. One who purchased a homestead acquired in 1894 under a valid judgment and execution against the homesteader for debt, if the sale was made during his lifetime, acquired nothing; if the sale was properly made after his death, the purchaser acquired the title subject to the possession of the minors during their minority, the widow being dead. (Following Keene v. Wyatt, 160 Mo. 1.)

*Held*, by VALLIANT and MARSHALL, JJ., that the decision in Broyles v. Cox, 153 Mo. 243, and In re Estate of Powell, 157 Mo. 151, are not affected by the decision in Keene v. Wyatt, 160 Mo. 1, but that those decisions are right under the homestead law as amended in 1895, in accordance with the authority of which they were decided; nor are they affected by the decision in this case, because the only parties who could raise the point here did not appeal.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*James Orchard* for appellant.

(1) This being a voluntary conveyance on the part of R. M. Morgan to his children, the respondents herein, it is in law fraudulent as to existing creditors, unless he was solvent at the time the deed was made, and had ample means to pay his debts; and it devolves on the donees, the respondents herein, to show that Morgan was solvent and able to pay his debts, and unless they have so done, the finding should be for the appellants. Snyder v. Free, 114 Mo. 360; Hoffman v. Nolte, 127 Mo. 135. (2) The question to be decided is, whether he had abandoned his homestead in Pemiscot county, Missouri. We think the evidence shows conclusively that he had. This being the case, the rights of a homestead exemption cease

to exist when the occupant leaves the premises with the view of acquiring a residence elsewhere, and with no intention to return. The intention to return must be formed at the time of the removal from the premises, in order to preserve and continue the homestead exemptions. Duffey v. Willis, 99 Mo. 132; Smith v. Bunn, 75 Mo. 559; Kaes v. Gross, 92 Mo. 647. The latter case has been overruled as to widows and minor children, but the rule laid down is applicable as to heads of families, as in the case at bar.

*A. H. Livingston* and *Green & Garnett* for respondents.

MARSHALL, J.—This is a proceeding in equity to divest title to certain lands in Howell county, out of the defendants, and vest it in plaintiff, and for a decree putting the plaintiff in possession thereof, and for rents and profits. The circuit court decreed the possession to the defendants until the youngest one of them becomes of age, and adjudged the title and possession to the plaintiff thereafter. The plaintiff appealed.

The controversy arose in this wise: The defendants are the children and heirs at law of R. M. Morgan, deceased. The plaintiff claims title by virtue of a sheriff's deed to the land, under several judgments rendered against R. M. Morgan during his lifetime. It does not appear from the record whether the land was sold by the sheriff, as aforesaid, before or after Morgan's death. The defendants claim, and introduced evidence tending to prove, that the land was the homestead of their father during his life, and was not worth more than fifteen hundred dollars, and that upon his death it passed to them until the youngest child attained its majority and that three of them, at the time of the trial, were minors, aged eleven, eight and six years, respectively. On the other hand, the plaintiff admits that the land was occupied by Morgan as a homestead for some time before the judgments were rendered

against him, and continued to be so occupied afterwards until his death, but claims that the debts evidenced by the judgments under which the land was sold on June 29, 1896, were valid and existing debts at the time Morgan acquired the land, and hence, neither he nor his heirs can claim it as exempted under the homestead laws. The defendants admit that the judgments are based upon indebtedness existing at the time their ancestor acquired this particular land, but avoid the conclusion of law asserted by the plaintiff by introducing evidence to show that this homestead was acquired with the proceeds of the sale of a former homestead that their father, in 1892, owned in Pemiscot county. The plaintiff, to parry the force of this claim of the defendants, introduced evidence tending to prove that while Morgan did own a homestead in Pemiscot county before the debts aforesaid were contracted, and while the land in controversy was acquired with the proceeds of the sale of the land in Pemiscot county, still, before such debts were contracted, he, Morgan, abandoned his homestead in Pemiscot county, moved his family and his residence to New Madrid, purchased and occupied a new homestead, declared his intention never to live in Pemiscot county again, continued to live with his family in the new homestead in New Madrid until his wife died, and then left New Madrid and lived in the county, with his children, for some time, and then in 1894 he sold the Pemiscot land and acquired the land in controversy and established his home in Howell county. To overcome this showing the defendants introduced evidence tending to show that Morgan did move his family from Pemiscot county to New Madrid, did purchase a house and live there until his wife's death, but that this was done without any intention of abandoning his homestead in Pemiscot county, and with the intention, all the time, of returning thereto, and that he moved to New Madrid only temporarily because his wife was sick and could not discharge the duties of a farmer's wife, and because New Madrid afforded school facilities for his children eight

or nine months in the year, while in Pemiscot county the schools were only open about five months; and they further showed that while living in New Madrid he kept some of his personal property on the place in Pemiscot county, worked the farm, visited it nearly every week and stayed there with his family at least a part of the time during the vacation of the schools. The evidence further disclosed the fact to be that Morgan was insolvent (outside of this land) and that he caused the deed to the land in controversy to be made to his children, the defendants, and the plaintiff claims that this was done to cheat, hinder and delay his creditors, and, hence, asks to have the title divested out of them and vested in it.

It further appears from the evidence that this land is worth fourteen or fifteen hundred dollars and that the judgment and costs under which it was sold aggregated $448.84, and that the plaintiff, through its agent and attorney, became the purchaser thereof at the sheriff's sale for the sum of $25.

I.

It is manifest that the crucial question in this case is whether or not Morgan abandoned his homestead in Pemiscot county. If he did, then neither he nor his heirs can claim any homestead rights in this land, for the debts evidenced by the judgments under which it was sold were in existence at the time he sold the Pemiscot county land and invested the proceeds in this land. [State ex rel. v. Diveling, 66 Mo. 375; Berry v. Ewing, 91 Mo. 395; Buck v. Ashbrook, 59 Mo. 200; Stivers v. Horne, 62 Mo. 473; Peake v. Cameron, 102 Mo. 568; Smith v. Bunn, 75 Mo. 559; Duffey v. Willis, 99 Mo. 132.]

On the contrary if Morgan did not abandon his homestead in Pemiscot county, and if his removal to New Madrid was induced by consideration for his sick wife and to obtain bet-

ter school facilities for his children, and if, when he so removed, and ever afterwards until he sold the Pemiscot county homestead and purchased this land with the proceeds of such sale, he intended to claim his home in Pemiscot county and to return thereto at some future time, then he acquired the same homestead rights in this land that he had in the Pemiscot county land, and it is not contended that that land, while held and occupied as a homestead, would have been subject to sale for the payment of the debts spoken of herein. The homestead law allows the sale of the homestead and the investing of the proceeds in another, and permits the carrying of the exemption of the first into the second. [Beckmann v. Meyer, 75 Mo. 333; Smith v. Enos, 91 Mo. 579; Farra v. Quigly, 57 Mo. 284; Creath v. Dale, 84 Mo. 349; Goode v. Lewis, 118 Mo. 357; Macke v. Byrd, 131 Mo. 682.]

The question of abandonment of a homestead is one of fact, and each case must rest upon its own facts and be solved by the application of the principles and rules of law referred to. The evidence in this case is conflicting and irreconcilable on the question of abandonment. There is enough substantial evidence in the record to support a finding either way. There is also sufficient impeaching evidence to justify a court in disregarding the testimony of defendants' principal witnesses; and likewise sufficient supporting testimony to warrant the court in believing their testimony. There is also sufficient evidence to show malice in one of the plaintiff's witnesses toward defendants' principal witness, and so to tincture his testimony with, at least, probable doubt. In this state of the record this court will defer to the finding of fact by the trial court. The trial court found that Morgan purchased this land "with his own money and had the same deeded to the defendants for the purpose of avoiding the payment of his debts; that at the time of the rendition of the judgment offered in evidence, said R. M. Morgan was the owner of said lands; that said lands were purchased with the proceeds of a homestead owned

by said Morgan in Pemiscot county, prior to the time of the purchase of the lands above described. It is therefore adjudged by the court that the defendants hold said lands as a homestead until the youngest child arrives at majority; that after the majority of said minors, then the title of said lands shall vest in the plaintiff."

The judgment must be construed to mean, that the trial court found the fact to be that Morgan did not abandon his homestead in Pemiscot county, and that as that homestead was not subject to the payment of the debts here referred to, neither is the homestead in this land which was purchased with the proceeds of the sale of the first-named homestead. This conclusion renders the finding that Morgan placed the title to this land in the defendants to avoid paying his debts, wholly immaterial. For if it was a homestead it was not subject to the payment of these debts and as he had a legal right to exchange one homestead for the other, it is not material what his motive was in putting the title in his children. No legal penalties can be inflicted for doing any act the law permits to be done. If the act done was legally done, the motive that actuated the doing thereof is immaterial. [Bank v. Guthrey, 127 Mo. 189.]

The conclusion being thus reached that this land was Morgan's homestead, if it was sold during his lifetime such sale was unlawful and conveyed no title to the plaintiff. [Bank v. Guthrey, 127 Mo. 189; Macke v. Byrd, 131 Mo. 691; Ratliff v. Graves, 132 Mo. 76.] If it was his homestead and was sold after his death, then the purchaser acquired the fee, subject to the extended right of homestead in the children until the youngest child attains his majority. [Keene v. Wyatt, 160 Mo. 1.] I cite this case as supporting this proposition, but I protest now as I vainly protested then, against such a construction of the statute. The record does not disclose whether the sale was before or after Morgan's death. As shown, if it was before his death, the plaintiff got no title and, hence,

can not complain of the judgment of the trial court, and the defendants do not complain, and have not appealed.    If it was after his death, the plaintiff has gotten all that he is entitled to under the decision in Keene v. Wyatt, supra, and, hence, can not complain.    For these reasons the judgment of the circuit court is affirmed.    All concur.

### ACCOMPANYING REMARKS.

VALLIANT, J.—Whilst concurring in the foregoing opinion, I do not wish to be understood as holding that under the homestead law, as amended by the Act of 1895, land embraced in the homestead can be sold under execution or in course of administration to pay debts during the life of the widow or minority of the children, or even that it can be sold for such purpose at the end of the extended period of exemption.    That question is not for decision in this case, because the only parties here who could complain of such a sale are not complaining.    The heirs of Morgan have not appealed from the judgment of the circuit court, and are therefore satisfied with what the judgment gave them.    In my opinion, the decisions of this court in Broyles v. Cox, 153 Mo. 242, and In re Estate of Powell, 157 Mo. 151, are right; and, as the rights adjudicated in those cases arose under the homestead law after the amendment of 1895, those decisions are not affected by the opinion in Keene v. Wyatt, 160 Mo. 1.    *Marshall, J.,* concurs in these views.