GLADYS MAUPIN, by Next Friend, L. V. MAUPIN, v. STANLEY I. LONGACRE and BANK OF KINGSVILLE, Appellants.

Division One, October 11, 1926.

1. **RESULTING TRUST: Loan by Wife to Husband: Debtor and Creditor.** Where money is advanced by way of a loan to be used by the borrower in the purchase of property in his own name no resulting trust arises in favor of the lender. A loan of money by a wife to her husband, with which he bought land and took the title in his own name, and which after his death, in her claim presented to the probate court, she affirmed was a loan, and on which claim she obtained a judgment against his estate as and for a debt, merely created the relation of debtor and creditor, and no rule of equity transformed the transaction into a trust, or made him a trustee of the title for her benefit.

2. **HOMESTEAD: Abandonment: Estoppel.** Unless the homesteader at the time he left with his wife and only child for another state had no intention of returning and using the property as a homestead, there was no abandonment. And where the wife after his death, soon after he departed for another state for the purpose of obtaining relief from tuberculosis, represented to the probate court that the property was a homestead and obtained an order to sell it to pay debts, the question whether the homestead was abandoned is foreclosed as to her and those claiming under its sale to her.

3. **HOMESTEAD STATUTE: Separate Code.** The Homestead Statute is a complete code unto itself for the purpose of governing rights of creditors and others interested in the statutory estate known as homestead. In so far as the homestead is concerned it displaces the Statute of Descents and Distributions.

4. **HOMESTEAD INTERESTS: Immunity for Homesteader: Estate for Widow and Children.** The Homestead Statute has a dual aspect: it provides the shelter of a privilege or right of exemption in the housekeeper from execution levy and sale of his homestead during his life except as to debts antedating its acquisition; at his death it operates to create, pass to and vest in his widow an estate during her widowhood and in his minor children during their minority, and such estate can be sold only for debts of the householder legally charged thereon during his lifetime.

5. **HOMESTEAD: Sale of Homestead Estate: To Pay Husband's Debts.** The Homestead Statute (Sec. 5857, R. S. 1919) declares that the homestead shall not be subject to sale for the debts of the husband, after his death, unless such debts were legally charged thereon in his lifetime, and the statute (Sec. 5860, R. S. 1919) declaring that "such homestead shall be subject to attachment and levy of execution upon all causes of action existing at the time of acquiring such homestead" has no application to the estate which vests in the widow and minor children.

6. ———: ———: **Debts Charged During Husband's Lifetime.** No attachment or levy of execution runs against a dead man's estate. The word "charged" used in the statute declaring that "such homestead shall not be subject to sale for the debts of the husband unless such debts be legally charged thereon during his lifetime" implies a lien, incumbrance or claim which is to be satisfied out of the specific thing or proceeds thereof to which it applies. The estate of homestead given to the widow or minor children by the statute is immune from sale for all debts unless legally charged thereon by the homesteader during his lifetime.

7. ———: **Sale of Estate of Widow and Minor: Antecedent Debt.** The husband borrowed money from his wife and used it to buy a farm, and took the title in his own name, and occupied it as his homestead. After his death the wife presented a claim to the probate court for the money thus borrowed, and the claim being allowed as a debt against his estate the homestead property was sold and conveyed. **Held,** that the debt was not legally charged on the property during the husband's lifetime, and the sale was void.

8. ———: **Suit to Quiet Title: Germane Cross-Bill: Support of Minor: Reimbursement.** Where the homestead estate of the widow and minor child was illegally sold to pay a debt due from the husband to the wife which was not legally charged upon the homestead property during his lifetime, and the minor, after the widow's death, brings a suit to quiet title against a defendant who claims title through such void sale, a cross-bill in which defendant sets up a claim for plaintiff's maintenance and support during her minority and while she resided with him is not germane to the cause of action pleaded in the petition.

9. ———: **Illegal Sale: Equities in Favor of Purchaser.** No equities arise in favor of a minor, nor in favor of a subsequent grantee through the illegal sale of the homestead property, by reason of the application of the proceeds to the payment of the general debts against the estate of the deceased homesteader, where the property was in no way liable for such debts.

10. **SUBROGATION: Payment of Mortgage by Widow: Later Conveyances: Homestead.** The widow who pays a deed of trust placed upon the homestead by her deceased husband does so, not as a volunteer, but to protect her own interest, and is entitled to be subrogated to the rights of the mortgagee. And if the equitable interest accruing to her through such subrogation thereafter passed by mesne conveyances to a defendant in the suit to quiet title, brought by the homesteader's minor child, after the illegal sale of the homestead property to pay the general debts of the deceased homesteader, such defendant is the owner thereof, and an accounting to determine its value is appropriate.

11. ———: ———: **Homestead: Accounting: Items.** The homesteader died leaving a widow and a minor child, and after his death the homestead property was illegally sold to pay his general debts. The conveyance was to another as a conduit, and he conveyed to the widow. There was an existing mortgage on the property, and she paid it, not as a volunteer, but to protect her own interest. Afterwards she conveyed to defendant, and married and died, and the minor child brings suit to quiet title, on the theory that the sale of her homestead estate was illegal, and that theory is sustained. **Held,** that the widow was subrogated to the rights of the mortgagee, and the defendant is subrogated to her equitable interest, and an accounting to determine its value should be taken; and as the widow was entitled to the possession and it was her duty to pay the taxes and interest up to the time of her remarriage, the accounting should begin at that date, and the land should be charged with the incumbrance and interest thereon and with the aggregate of taxes paid by defendant and his grantors, and from the total of these items should be deducted the value of the rents and profits during the period covered by the accounting.

Corpus Juris-Cyc. References: **Attachment,** 6 C. J., Section 350, p. 193, n. 69 New. **Charge,** 11 C. J., p. 291, n. 68; p. 292, n. 74, 75, 76. **Executions,** 23 C. J., Section 111, p. 360, n. 24. **Homesteads,** 29 C. J., Section 5, 784, n. 33; Section 199, p. 858, n. 42; Section 350, p. 935, n. 38; p. 936, n. 43; Section 355, p. 939, n. 61; p. 940, n. 62; Section 470, p. 994, n. 18; Section 503, p. 1012, n. 85 New; Section 508, p. 1017, n. 66; Section 556, p. 1043, n. 19. **Quieting Title,** 32 Cyc., p. 1361, n. 32 New. **Subrogation,** 37 Cyc., p. 443, n. 26. **Trusts,** 39 Cyc., p. 135, n. 11.

Appeal from Johnson Circuit Court.—*Hon. C. A. Calvird,* Special Judge.

REVERSED AND REMANDED (*with directions*).

*W. E. Suddath* and *M. D. Aber* for appellants.

(1)   This is an action to determine title and it was therefore the duty of the court to adjust all equities and claims of every kind between the parties. Sec. 1970, R. S. 1919.   (2)   All the evidence is that this eighty acres was bought with the proceeds and increase of the separate means of Drucie M. Welborn, the widow. So that the land was the proceeds of the separate means of Drucie and is in equity her property. Sec. 7328, R. S. 1919; Broughton v. Brand, 94 Mo. 169; Owings v. Wiggins, 133 Mo. 630; Jones v. Elkins, 143 Mo. 647; McLeod v. Venable, 163 Mo. 536; Hudson v. Wright, 204 Mo. 412. (3)   Even if the property were a homestead, it may be sold for a debt antedating the acquisition of the homestead. Armor v. Lewis, 252 Mo. 568; Anthony v. Rice, 110 Mo. 223; Broyles v. Cox, 153 Mo. 242; Balance v. Gordon, 247 Mo. 119; In re Bovard's Estate, 231 S. W. 602.   (4)   And if the property were a homestead, the proof all shows that it was at that time incumbered by the lien of a deed of trust placed thereon by James M. Welborn and his wife as a purchase-money debt of six hundred dollars, and also subject to the purchase money claim of Drucie M. Welborn for $485. And it was uncontradicted that Drucie M. Welborn had paid off this $600 encumbrance, and never got her $485 debt in any other way. She was, therefore, under the most elementary principles of equity entitled to and was subrogated to these rights and had her rights, on plaintiff's own theory, in the property to that amount, and it was admitted by plaintiff, and uncontradicted that $1200, was all the property was worth at the time in question.   (5)   Defendant holds his title by conveyance from Tevis, trustee; Tevis concededly was an innocent holder for value and held full title, and conveyed a like title to appellant Longacre.   Craig v. Zimmerman, 87 Mo. 475; Hendricks v. Callaway, 211 Mo. 536.

*N. M. Bradley* and *E. B. Silvers* for respondents.

(1)   The sale by the administratrix to herself, accomplished through the subterfuge of passing title to her brother, was "null and void." R. S. 1919, sec. 161; Green v. Holt, 76 Mo. 677; State ex rel. Whitlow v. Am. Surety Co., 191 Mo. App. 191; Gilmore v. Thomas, 252 Mo. 147.   (2)   This land being James M. Welborn's homestead, there could be no valid sale of it by his administrator to pay his debts.

R. S. 1919, sec. 5857; Balance v. Gordon, 247 Mo. 119; In re Powell's Estate, 157 Mo. 151; In re Rombauer Estate, 256 S. W. 1066. The only exception to the rule against sale of a homestead to pay debts, is that the same is subject to levy of attachment and execution during the homesteader's lifetime, for debts existing prior to acquisition of the homestead. R. S. 1919, sec. 5860; Balance v. Gordon, 247 Mo. 119. After the homestead owner's death, the homestead becomes an estate instead of a privilege; and around this estate of the widow and minors the law forms a barrier which cannot be trespassed by the administrator to pay any debt, pre-existing or otherwise. Brewington v. Brewington, 211 Mo. 48; Balance v. Gordon, 247 Mo. 119; In re Rombauer Estate, 256 S. W. 1066. The wrongful sale of the homestead to pay debts is absolutely void, and passes nothing. R. S. 1919, sec. 5857; New Madrid Banking Co. v. Brown, 165 Mo. 33; Ehlers v. Potter, 219 S. W. 918; Dennis v. Gorman, 233 S. W. 53; Patton v. Buxton, 238 S. W. 118. (3) This administrator's sale being void, and not merely voidable, no one can become an innocent purchaser of the land, because no title ever passed at all. Stratton v. Cole, 203 Mo. App. 257; Gilmore v. Thomas, 252 Mo. 147; Gross v. Watts, 206 Mo. 373; German Sav. & Loan Soc. v. DeLashmutt, 67 Fed. 399. (4) The record of the probate proceeding upon which title of defendants rests shows in four places that this was Welborn's homestead. So defendants took with notice thereof, and can't be innocent. Connor v. McCoy, 83 S. C. 165; Board of Education v. Berry, 62 W. Va. 433; Williamson v. Beardsley, 137 Fed. 467; Lady Washing Con. Co. v. Wood, 45 Pac. 811. (5) If Drucie M. Welborn had any right to enforce in equity against this land, on the basis that her money went into its purchase, she waived it for all time when she elected to treat the $325 as a loan to her husband, and pursued her legal remedy by having it allowed as a debt against his estate. At the same time she inventoried this land as belonging to him.

RAGLAND, P. J.—This is an action to determine title to real estate and for equitable relief, under Section 1970, Revised Statutes 1919.

The land which is the subject of the controversy is the west half of the northeast quarter of Section 19, Township 47, Range 28, in Johnson County. James M. Welborn is the common source of title. He acquired the title by deed dated March 18, 1905, and which he filed for record July 29th of the same year. At the time he obtained the title he moved onto the land, accompanied by his wife and an infant daughter. He at once set about farming, and put in a crop. Presently he was advised by a physician that he had tuberculosis, and that an immediate change of climate was the only thing that offered hope of prolonging his life. He thereupon had a public sale at which he sold

all of his property except the farm and growing crop, and then went to Colorado, taking his wife and child with him. The altitude there affected him adversely, he brought his family back to Johnson County, left them with relatives and then went to Texas in search of favoring climatic conditions. His health did not improve and he started home, dying on the way, February 3, 1906. He left surviving him a widow, Drucie M. Welborn, and one child, Gladys—the plaintiff in this case.

On August 16, 1905, Welborn, being joined therein by his wife, Drucie M., executed a deed of trust on the land to secure to one Jennie E. Smith the payment of a promissory note for $600, due five years thereafter, with interest at the rate of six per cent per annum payable annually. The instrument was recorded the same day it was given. A brother-in-law gathered Welborn's crop for him during his absence in the fall of 1905.

On February 12, 1906, letters of administration on Welborn's estate were granted to his widow by the Probate Court of Johnson County. She thereafter filed an inventory and an appraisement, from which it appeared that the estate of the decedent consisted of the land in controversy and personal property of the value of $297.50. The personal property being within the amount allowed the widow as her absolute property by statute, she made an appropriation of it. On the 27th of February, 1907, she filed a claim against the estate of her husband for $485. The claim paper, after setting out the items of the claim, recited: "The above money so reported and set out here was loaned to my deceased husband in his lifetime and on the 18th day of March, 1905, and for the purpose of buying the west half of the northeast quarter of Section 17, Township 47, Range 28 (the land in suit) and that her money is still invested in said land." An administrator *pendente lite* was appointed, a hearing had and the claim allowed and classified as a demand of the fifth class. In addition to the above, demands in the aggregate sum of $120.90 were allowed. At the May term, 1907, of the probate court, at the time of making her first annual settlement, the administratrix applied for an order to sell the real estate. The order was made. Eliminating recitals it was in this language:

"It is therefore ordered that the said administratrix do sell, at private sale, and for not less than three-fourths of its appraised value (first having the same duly appraised according to law), the said real estate in said petition mentioned and subject to the homestead right of said widow, and that she report her proceedings to the court at its next regular term."

Following the making of the order of sale the administratrix caused the land to be appraised. It was appraised, "subject to all the homestead and dower rights of the widow of said deceased in and to

said land, at the sum of $800." At the August term, 1907, of the probate court the administratrix made report of a sale as follows:

"That in obedience to the order of this court, made at its May term A. D. 1907, directing her to sell, at private sale, the real estate in said order described, as follows, to-wit:

"The West half of the northeast quarter of Section Nineteen, in Township Forty-seven, Range Twenty-eight, in Johnson County, Missouri, subject to the dower and homestead of the widow and all encumbrances, she did, on Thursday the eighth day of August A. D. one thousand nine hundred and seven (having first had the same duly appraised by Charles Necessary, William T. Windsor and Charles T. Noland, three disinterested householders of said county, they having been first duly sworn, as appears by the affidavit herewith filed, marked Exhibit A), sell the said real estate as follows, viz:

"The west half of the northeast quarter of Section Nineteen, Township Forty-seven, Range Twenty-eight, subject to the dower and homestead of the widow and all encumbrances, to S. I. Longacre for the price and sum of eight hundred dollars, cash.

"And the said S. I. Longacre has fully complied with the terms of said sale, and has paid to me the sum of eight hundred dollars in cash, as required by said Order of Sale; and I certify that said real estate was sold for not less than three-fourths of its appraised value. All of which is respectfully submitted."

·The sale so reported was confirmed and the administratrix ordered to execute a deed to the purchaser. A deed was executed in conformity with the order. The deed itself is not set out in the record; the abstract recites parenthetically: "Said deed is ordinary form of administrator's deed conveying the described land to defendant reciting order as above."

S. I. Longacre, the purchaser, was a brother of the administratrix. On September 11, 1907, he executed a quitclaim deed wherein he purported to convey the land to her individually, for a consideration of $800. The deed of trust which had been given by Welborn and his wife to secure the Smith note for $600 was satisfied of record May 26, 1908.

Two or three years after the death of her husband, Drucie Welborn married one Shepherd. On October 4, 1913, she and her husband executed a deed of trust on the land in question to secure to one Carmichael the payment of a note for $700, due five years thereafter, with six per cent annual interest thereon. A few days later a second deed of trust to one Tevis, as trustee, was executed to secure the payment of a note for $375 due one year thereafter. In June, 1916, an execution, sued out on a judgment for $200 against Shepherd and his wife and in favor of the defendant, Bank of Kingsville, was levied upon the land. On November 3, 1916, the land was sold at a fore-

closure sale under the Tevis deed of trust to defendant Longacre for $675 and he thereupon received a trustee's deed. On December 16, 1916, Longacre obtained from the defendant bank a loan of $1500 and gave a deed of trust on the land to secure it; out of the proceeds of the land he satisfied the Carmichael deed of trust and the outstanding judgment lien held by the bank. So that the record title to the land at the commencement of this suit appeared to be in defendant Longacre, subject to the lien of a deed of trust to the bank securing an indebtedness of $1500.

Mrs. Shepherd died in the year 1916. Plaintiff must have been about eleven years of age at that time. After her mother's death she was taken into the home of her uncle, defendant Longacre, and there cared for as a member of his family until she married. When this suit was commenced she was but sixteen years of age.

There was evidence on the part of defendants tending to show that James M. Welborn at the time of his marriage was wholly without means; that property of his wife was sold and the proceeds invested in a store in a little town or village known as Robbins; that this store was subsequently sold and the money realized from the sale was used to purchase a half interest in a similiar mercantile enterprise at Chapel Hill, in Lafayette County; and that that interest was exchanged for the land in suit. The land at the time of Welborn's death did not exceed in value $1500.

The petition alleges that James M. Welborn died the owner in fee of the land in controversy; that the same was his homestead; that he left surviving him a widow and a minor child; that plaintiff is his only heir; and that the purported sale of the land by the administratrix was void: (1) because it was an attempt to sell the land to herself and (2) because the debts upon which the order of sale was based were not legally charged thereon in the lifetime of the homesteader. It further alleges the remarriage of the widow, the execution by her of the Carmichael and Tevis deeds of trust; her death; the foreclosure of the Tevis deed of trust and the purported purchase of the land by defendant Longacre; and the execution by him of the deed of trust to the defendant bank. It prays that the court ascertain and determine the right, title and interest of each of the several parties; that plaintiff be adjudged to be the owner in fee simple; that the deeds under which defendants claim be cancelled and set aside; and that plaintiff have general relief.

The defense pleaded by the defendant Longacre sufficiently appears from the following paragraphs of his separate answer:

"Further answering, this defendant says that although the legal title to said real estate vested in James M. Welborn at the time of his death, said Welborn was not the owner of said land, but held same in trust for said Drucie M. Welborn, his wife; that said land was in

truth and in fact bought with the separate money and means of Drucie M. Welborn, the proceeds of the sale of her own real estate, owned by her prior to her marriage with James M. Welborn, and was in fact her own property. That following her appointment as administratrix, and as means of procuring in her the legal title to her own land, she presented and had proved against the estate of her said husband as a debt, a claim for part of her funds which had gone into the land, and when same was reduced to a judgment, she obeyed the order of the probate court duly and properly made thereon, and sold said land; the title thereto was taken by her brother Stanley I. Longacre, this defendant, as trustee for her, rather than to have the deed made by the county clerk, as in such cases provided by law, and that thereafter this defendant conveyed the land to her; that as a result thereof she the said Drucie M. Welborn procured in herself the title to which she was originally entitled, of the full legal title to said land, subject to the lien of a deed of trust of date August 16, 1905, shown at deed book 146, page 50, securing a debt of $600, which had been incurred by said Welborn and his said wife for that portion of the purchase money for said land which had not been furnished by her, the said Drucie M. Welborn; that thereafter, she the said Drucie paid off and discharged the lien of said deed of trust.

"That it is not true that the land described was a homestead of James M. Welborn at the time of his death; that in addition to the facts hereinabove stated by reason of which it was not a homestead, long prior to the death of James M. Welborn he and his said wife had abandoned and removed from said land with the intention not to return to it, and that he never did return thereto.

"That even though said Welborn had had a homestead in said land and had died with such right therein, yet said Drucie M. Welborn by reason of her advancements of all her separate means for the purchase of said land, and her payment of the said purchase money mortgage and the money by it secured, was entitled to be subrogated to the rights which plaintiff may have as an heir of James M. Welborn in said property and that this defendant, who is the owner by mesne conveyance of whatever right and title Drucie M. Welborn had therein, is entitled to such subrogation in her place and stead. . . .

"And further answering, this defendant says that from and prior to the death of James M. Welborn, and for a period of more than ten years, this defendant took plaintiff into his home, as a member of his family, and furnished her her means of subsistence, her living, clothing, lodging, medical care and attention, and her education and in all things cared for her as his own child; that all of said care and attention was of the reasonable value of more than $200 per year, and that even though the court should find that James M. Welborn had a right of homestead in said land and that plaintiff has any rights therein,

such rights if any as she may have should be charged with the value of the care, maintenance, upkeep, attention and education for said period of more than ten years, to the amount of twenty-five hundred dollars.''

The answer of the defendant bank admits the execution of the deed of trust purporting to secure to it the payment of a note for $1500, which it asserts is a valid lien, and denies all other allegations of the petition.

The trial court found the issues for the plaintiff and adjudged that she is the owner of the land in fee simple, and that neither of the defendants has any interest in or right or title to it. It further cancelled and set aside the deeds of trust given by plaintiff's mother and the one executed by Longacre to his co-defendant. From such judgment defendants prosecute this appeal.

The questions presented on this record are these: Did Welborn hold the title to the land in controversy in trust for his wife? If he owned it in his own right, did he abandon his homestead therein during his lifetime? If it was his homestead at the time of his death, was it subject to sale for the payment of debts in existence at the time he acquired it? If the sale by the administratrix was void, what equities, if any, exist in favor of the defendants or either of them?

I. It is claimed by appellants that the land was purchased by Welborn with the separate means of his wife which he had not reduced to his possession with her written assent, and con-

**Resulting Trust.** sequently that a trust resulted in her favor. She affirmed, however, after his death that she had loaned him the money, and on the basis of that claim obtained a judgment against his estate as and for a debt. She, if living, would not now be heard to assert the contrary; nor will those who claim under her. ''It is a well-settled rule that where money is advanced by way of a loan to be used by the borrower in the purchase of property in his own name no resulting trust arises in favor of the lender.'' [39 Cyc. 135.] A loan of money without fraud by the borrower merely creates the relation of debtor and creditor, and no rule of equity transforms such a transaction into a trust or creates the relation of trustee and *cestui que trust* between the borrower and lender. [Cottonwood County Bank v. Case, 125 N. W. (S. D.) 298.] There was no trust in favor of the wife in this case.

II. If there was an abandonment of the homestead, it was because Welborn, at the time he left for Colorado with his wife and baby, had no intention of returning and resuming the use of the property

**Homestead.** as a homestead. [Kaes v. Gross, 92 Mo. 647; New Madrid Banking Co. v. Brown, 165 Mo. 32.] The evidence discloses no facts or circumstances attending the quitting of the actual

occupancy, or declarations on the part of Welborn, made either at the time or subsequently, which afford any particular aid in solving this question of fact. It is significant, however, that the wife who was in a sense a party to the removal from the land and who was fully cognizant of the intentions of her husband and herself, at the time, with reference to returning to it, continued to treat and regard the place as their home. After his death she represented to the probate court that it was a homestead and obtained an order of sale which gave full recognition to that status. In any event the question of whether the homestead had been abandoned would seem to be foreclosed as to the administratrix and those claiming under her. She obtained an order to sell the land *subject to the homestead right, that* was what she sold, and the sale of *that* was the sale which the court confirmed.

III.   After a homestead has vested in the widow and minor children upon the death of the homesteader, is it subject to sale for the payment of his general debts which antedate its acquisition? In many of our decisions, dealing with other features of the homestead law, language will be found which seems to assume as of course that the *estate* of homestead is subject to sale for all debts owing at the time the homestead was acquired; but, so far as the writer has been able to ascertain, the question has never been directly passed upon by this court. The question has been pressed many times, but in every instance the decision has been made to turn upon some other point. Its solutions, however, ought not be difficult. We do not have to look beyond the Homestead Statute; for it is a complete ''code unto itself, for the purpose of governing rights of creditors and others interested in the statutory estate known as homestead.'' [In re Rombauer's Estate, 256 S. W. 1066; Armor v. Lewis, 252 Mo. 568.] The statute has a dual aspect: it provides ''the shelter of a privilege or right of exemption in the housekeeper from execution levy and sale of his homestead right—during his life;'' at his death ''it operates to create, pass to and vest in his widow and minor children an estate for life and years respectively and this with the incidents of such estates.'' [Brewington v. Brewington, 211 Mo. 48.] These two things are dealt with differently. With respect to the right of exemption it provides: ''The homestead of every housekeeper  .  .  .  shall  .  .  .  be exempt from attachment and execution, except as herein provided.'' [Sec. 5853, R. S. 1919.] ''Such homestead shall be subject to attachment and levy of execution upon all causes of action existing at the time of acquiring such homestead.'' [Sec. 5860, R. S. 1919.] But with reference to the estate of homestead it declares: ''Such homestead shall not be subject to sale for the debts of the husband unless such debts be legally charged thereon during his lifetime.'' [Sec. 5857, R. S. 1919.] Sec-

315 Mo.—56.

tion 5860 above has no application to the estate of homestead which vests in the widow and minor children, because "no attachment or levy of execution runs against a dead man's estate." [Balance v. Gordon, 247 Mo. 125.] It thus appears that the right of exemption is limited to the levy of attachment and execution upon causes of action accruing after the acquisition of the homestead; but the estate of homestead is immune from sale for all debts unless legally charged thereon by the homesteader during his lifetime. It has been argued that the only homestead which can pass to the widow and minor children is the one which the husband owned, namely, one subject to the payment of debts contracted before its acquisition. But that thought harks back to the Statute of Descents and Distributions, under which the heir takes *sub-modo,* i. e., subject to the payment of the ancestor's debts, and the creditor's claim is somewhat in the nature of a lien; whereas, that statute, in so far as homestead is concerned, has been displaced by the Homestead Act which covers the whole ground. [Armor v. Lewis, supra.] The latter statute, upon the death of the homesteader, transforms what had been merely a privilege, an immunity, into a vested estate, and withdraws that estate from the reach of all creditors, except those whose claims have been made a legal charge on the land by the homesteader during his lifetime. This conclusion follows inevitably from the interpretations which we have heretofore put upon the Homestead Statute.

The phrase, "debts . . . legally charged thereon," is of obvious import. While the word "charge" is of broad significance. as used in the statute it clearly means: "A lien, incumbrance, or claim which is to be satisfied out of the specific thing or proceeds thereof to which it applies. [1 Bouvier.] As the debt for which the land was sold was not legally charged on it by Welborn during his lifetime. The probate court was without jurisdiction in the premises and the sale itself was a nullity. [Dennis v. Gorman, 233 S. W. 50; and cases cited.]

IV. That portion of the cross-bill of defendant, Longacre, which sets up a claim for plaintiff's maintenance and support during a number of years prior to her marriage is not germane to the cause of action pleaded in the petition, and for that reason requires no further attention. [Fulton v. Fisher, 239 Mo. 130; Wade v. Bank, 221 S. W. 364.]

No equities arose in favor of defendant Longacre or Drucie Welborn through the application of the proceeds of the sale of the land to the payment of general debts against the estate of James M. Welborn, for the simple reason that the land was in no way liable therefor. But with respect to the incumbrance which had been placed upon it by Welborn and his wife and which was paid by her after his death a different situation exists. It was a valid and subsisting

charge against the land, and it was paid by the widow, not as a volunteer, but for the protection of her own interest; she was entitled, therefore, to be subrogated to the rights of the mortgagee. The equitable interest accruing to Mrs. Welborn through subrogation thereafter passed by mesne conveyances to the defendant Longacre, and is now owned by him subject to the deed of trust given by him to the defendant bank. [Valle's Heirs v. Fleming's Heirs, 29 Mo. 152; Shanklin v. Ward, 291 Mo. 1.] Subject to that interest plaintiff is the owner of the land in fee simple.

The equitable charge against the land just referred to can be determined only by taking an account. The accounting should begin as of the date of the remarriage of the widow. Up until that time she was entitled to the possession of the premises and it was her duty as life tenant to pay the taxes and the interest on the incumbrance. In taking the accounting the land should be charged with the amount of the incumbrances, $600, with interest thereon, and the aggregate of the state and county taxes which have been paid by defendant Longacre and his grantors. From the total of those items should be deducted the value of the rents and profits accruing from the land during the period covered by the accounting. The interest should be reckoned according to the terms of the instruments constituting the original encumbrance.

The judgment of the circuit court is reversed and the cause remanded with directions to that court to enter an interlocutory judgment, defining and adjudging the right, title and interest of each of the several parties, and then take an account and proceed to final judgment,—all in accordance with the views herein expressed. All concur, except *Graves, J.*, absent.