MARY PIPES CLUBINE, HERMAN PIPES, BERTHA PIPES BRANNAN, CHARLEY PIPES and DARRELL PIPES v. ELLA FRAZER, HARLEY W. FRAZER, EMMA HENNEN, NELLIE GORMAN, E. S. FRAZER, MYRTLE DEWITT, LULU B. FRAZER, ROBERT E. FRAZER, GLADYS RUTH FRAZER, GERALD R. MORRIS, SARAH M. FRAZER, JOHN W. LEE, Administrator of the Estate of ESTRA E. FRAZER, and SARAH M. FRAZER, Administrator of the Estate of ALFRED R. FRAZER, Defendants, EMMA HENNEN, NELLIE GORMAN and JOHN W. LEE, Administrator of the Estate of ESTRA E. FRAZER, Appellants.— 139 S. W. (2d) 529.

Division Two, May 4, 1940.

(1)

2

*P. M. Marr* and *L. E. Atherton* for appellants.

4

*A. B. Walker* and *Owen & Thurlo* for respondents.

ELLISON, P. J.—The plaintiffs-respondents are the lineal descendants and heirs through a former marriage of Sarah E. Frazer who died in November, 1932, predeceasing her second husband Estra E. Frazer a little more than two years. The defendants-appellants are his lineal descendants and heirs by a former marriage, together with his widow by a third marriage, his administrator and the widow of a deceased son. Respondents sued in equity. The decree appealed from found and adjudged them to be vested with the fee simple title to a certain described 80 acres of farm land in Sullivan County.

The bill is very informal, and alleges that in 1897, a year after the marriage of Mr. and Mrs. Frazer, he appropriated without her written consent the proceeds of her separate real and personal property (in violation of the Married Women's Statute, Sec. 3003, R. S. 1929, Mo. Stat. Ann., p. 5064) of the aggregate value of $2450, and used the same to pay for and improve said 80 acres purchased the same year, the title to which he fraudulently took in his own name without Mrs. Frazer's knowledge or consent. It is further alleged that thereafter at all times he fraudulently assured her she owned and held the record title to the land, in consequence of which she did not learn the contrary until January, 1931. Next comes an averment that the tract was always jointly occupied by the couple as a home-

stead, following which the conclusion is pleaded that the respondents "are entitled to all the money and property used by" Mr. Frazer in paying for and improving the land, "with interest on the amount so used from date same was so invested." The prayer seeks: (1) a money judgment for the amount so appropriated, together with interest and an equitable lien on said 80 acres and any other land of which Mr. Frazer died seized; (2) an ascertainment and determination of respondents' title; (3) if need be an accounting and partition of respondents' share in said land and the estate of Estra E. Frazer; (4) general relief.

It is hard to tell what basic relief the bill seeks. Apparently it is a bill in a double aspect asking primarily a money judgment and equitable lien on real estate, and alternatively a decree vesting title in the same real estate. The two were inconsistent. The suit for the money—a debt due Mrs. Frazer at and before her death—was a personal action, which should have been prosecuted by her administrator. The suit for the land could be maintained only by her heirs on the theory that it belonged to them. [Naylor's Admr. v. Moffatt, 29 Mo. 126, 128; Cheely's Admr. v. Wells, 33 Mo. 106, 109; McKee v. Downing, 224 Mo. 115, 127, 124 S. W. 7, 12; Orchard v. Wright-Dalton-Bell-Anchor Store Co., 225 Mo. 414, 433, 125 S. W. 486, 492.] The fact that an equitable lien on the real estate was prayed in the personal action did not convert it into a real action, but on the contrary conceded title was in appellants and not respondents. [Nettleton Bank v. Estate of McGauhey, 318 Mo. 948, 953, 2 S. W. (2d) 771, 774 (7).]

In our opinion the bill was demurrable on the ground of repugnancy. [19 Am. Jur., sec. 228, p. 182; Lloyd v. Brewster, 4 Paige (N. Y.) 537, 540, 27 Am. Dec. 88; Chisholm v. Wallace (Ala.), 40 So. 219; Repetto v. Walton, 313 Mo. 182, 281 S. W. 411.] The respondents could not claim the money as a debt, and at the same time make it the basis for a resulting trust in land. [Maupin v. Longacre, 315 Mo. 872, 880, 288 S. W. 54, 57.] But no demurrer was filed on that ground. However, it is plain the respondents as heirs of Mrs. Frazer could not have recovered a debt due her estate without in some way accounting for the failure of her legal representative to assert the cause of action. [Richardson v. Cole, 160 Mo. 372, 61 S. W. 182, 83 Am. St. Rep. 749; People's Savings Bank v. Hoppe, 132 Mo. App. 449, 459, 111 S. W. 1190.]

Insofar as the relief sought was the enforcement of a resulting trust or the establishment otherwise of respondents' title to the 80 acres, we have concluded the action was barred by the ten year Statute of Limitations applicable to married women, Sec. 853, R. S. 1929, Mo. Stat. Ann., p. 1128. This statute was enacted by Laws Mo. 1919, p. 496, two years after the Legislature, by Laws Mo. 1917, p. 205, had struck out that part of Sec. 1881, R. S. 1909 (now Sec. 852, R.

S. 1929, Mo. Stat. Ann., p. 1126) allowing women under the disability of coverture 24 years to bring such actions. Under Sec. 853 this suit should have been brought by 1921, within two years after the passage of the act since the cause of action had accrued more than ten years theretofore. This is true regardless of any fraud practiced on Mrs. Frazer, except as discussed in the next paragraph. [Kober v. Kober, 324 Mo. 379, 385, 23 S. W. (2d) 149; Parish v. Casner (Mo. Div. 1), 282 S. W. 392, 409 (2); Turnmire v. Claybrook (Mo. Div. 1), 204 S. W. 178, 180.]

Respondents contend the limitation of Sec. 853 was tolled under Sec. 879, R. S. 1929, Mo. Stat. Ann., p. 1164, because Mrs. Frazer was prevented from commencing her suit for the 80 acres within the statutory period by the "improper acts" of Mr. Frazer, these acts consisting of alleged misrepresentations by him to her for 34 years up to 1931 that she was the record owner of the land when in truth he had taken the title in his own name. For this reason respondents argue the 10 year period of limitation did not start to run until 1931; and that since Mrs. Frazer died in November, 1932, they as her heirs had a right to commence the action under Sec. 855, R. S. 1929, Mo. Stat. Ann., p. 1130, within three years thereafter, which they did in June, 1935.

It was held in Branner v. Klaber, 330 Mo. 306, 325, 49 S. W. (2d) 169, 177, and Rogers v. Brown, 61 Mo. 187, 193, that the saving provisions of Sec. 879, supra, extend to actions for the recovery of real estate, notwithstanding the section appears in Article 9 of Chapter 5 of the 1929 statutes, which deals with *personal* actions. But even so, is it true that respondents had the right to bring this suit within three years after her death, under Sec. 855? We think not. The section provides:

"If any person entitled to commence such action or to make such entry die during the continuance of any disability specified in section *1307*, and no determination or judgment be had of the title, right or action to him accrued, his heirs, or any person claiming from, by or under him, may commence such action or make such entry after the time in this article limited for that purpose, and within three years after his death, but not after that period." (Italics ours.)

It will be noted the text of the statute refers to another statute, "section 1307." But Sec. 1307, R. S. 1929, Mo. Stat. Ann., p. 1515, refers to a wholly unrelated matter. Obviously the reference was a mistake, due to printing Sec. 855 in the 1929 revision just as it appeared in the 1919 revision. The statute which was Sec. 1307 then is now Sec. 852. Reading together that section and Sec. 855, it will be seen the latter provides that if any person entitled to commence an action for the recovery of real estate die "during the continuance of any *disability* specified in Section (852)" without obtaining a determination of his rights, then his heirs may commence such action,

after the time limited in the Article, but not later than three years after his death. But Mrs. Frazer did not die under any disability specified by Sec. 852. She was a married woman until her death, it is true, but, as already pointed out, Laws Mo. 1917, p. 205, struck out coverture as one of the disabilities named in Sec. 1881, R. S. 1909. The words "married woman" do not appear either in Sec. 1307, R. S. 1919, or Sec. 852. So the statute is inapplicable to this case.

Another contention made by respondents is that the limitation of Sec. 853 does not apply because Mr. and Mrs. Frazer lived together on the 80 acres until her death, in consequence of which there was no adverse possession to start the statute running. This is incorrect. Unlike Sec. 850, R. S. 1929, Mo. Stat. Ann., p. 1121, no adverse possession is necessary to put Sec. 853 in operation. It merely declares: "all actions which have accrued to married women concerning the recovery of real estate, or any interest therein, or right thereto, or possession thereof, . . . shall be forever barred . . . unless such married woman shall bring her action within ten years after the same shall have accrued" (or otherwise as the statute specially requires). It is like Sec. 363, R. S. 1929, Mo. Stat. Ann., p. 235, the Statute of Limitations applicable to actions for the recovery of dower. [See Belfast Inv. Co. v. Curry, 264 Mo. 483, 500, 175 S. W. 201, 206(9).]

Having thus ruled the question it is unnecessary to say more. But in deference to the deceased principals in this controversy, we should add this. It is very doubtful whether Estra Frazer was guilty of "improper acts" within the meaning of Sec. 879. The fact is conceded that he recorded within a few months after he got it, the deed by which the 80 acres in dispute was conveyed to him in 1897. Under Branner v. Klaber, supra, 330 Mo. l. c. 326, 49 S. W. (2d) 169, 177, and several other cases this imparted constructive notice of his title to creditors and other adversary claimants, and started the running of the Statute of Limitations. To the contrary, it is true that where there are fraudulent misrepresentations or concealments concerning the record title to property, especially as between persons in a confidential relation, the above rule does not apply. [26 C. J., sec. 70, p. 1155, sec. 109, p. 1211; Scott v. Hill, 330 Mo. 490, 493-4, 50 S. W. (2d) 110.]

But there is little if any evidence that Mr. Frazer ever misstated the facts to his wife about the *record* title. He frequently said the 80 acres belonged to Mrs. Frazer or referred to it as "Ma's 80." One witness said he heard Mrs. Frazer say in Mr. Frazer's presence quite often that she had title to the 80 acres or supposed she had; but most of these statements were made out of the presence of Mrs. Frazer and many years after the purchase of the land. Another witness testified Mr. Frazer told him he was losing his land a little at a time; that his wife was worrying about it; and he directed the witness to go tell her she had the 80 acres. On the other hand, respondents'

own evidence shows he referred to the 80 acres on one occasion as "his homestead;" and another time remarked it "was about all *they* had left." The land was included in a 360 acre farm bought at one time by one deed. Mrs. Frazer made no claim to any other part of it, and she joined him in executing several mortgages thereon. There is no reason for thinking she believed the original deed had been made to her.

We think further the evidence was insufficient to establish a resulting trust. The separate property owned by Mrs. Frazer at the time of her marriage in 1896 was worth $1600 or $1700. The testimony concerning the value of the personalty was very unsatisfactory, coming from two witnesses who testified roughly from memory as to how many head of livestock, what amount of implements and harness, how many acres of corn and how many bushels per acre, she had 40 years before, together with the age or condition and value of all these.

The 360 acre farm was bought for $5760 and immediately encumbered with a mortgage for $3840, thereby justifying the inference that the balance of $1920 was paid in cash. This may have included all or a part of the proceeds from Mrs. Frazer's separate property, but there was no proof of it. The 80 acres now claimed by her heirs was unimproved and worth about $1200. There is no evidence as to the value of the rest of the 360 acres, or as to how much of Mrs. Frazer's money went into the purchase price of the land and how much for improvements. In a resulting trust case these facts must be pleaded and proven in detail—this for the reason that the trust must arise from the facts existing at the time title to the land was acquired; and cannot be created subsequently by the expenditure of the claimant's money in improving the property, or by oral declarations of the grantee. [65 C. J., sec. 972, p. 1040, sec. 188, p. 428; Parker v. Blakeley, 338 Mo. 1189, 1202, 93 S. W. (2d) 981, 988.] We need not refer to the many decisions holding that the evidence required to establish such trusts must be clear, cogent, positive and convincing.

For the reasons stated, the decree must be reversed as to the part of the bill seeking to establish respondents' title to the 80 acres. It would do no good to remand the cause for a rehearing on the other part of the bill praying a money judgment. The five-year Statute of Limitations, Sec. 862, R. S. 1929, Mo. Stat. Ann., p. 1143, was applicable thereto, but Sec. 868, R. S. 1929, Mo. Stat. Ann., p. 1156, postponed the operation of that statute during Mrs. Frazer's life because she was a married woman. (It was changed in this regard by Laws Mo. 1933, p. 190, after her death.) However, Sec. 870, R. S. 1929, Mo. Stat. Ann., p. 1159, required the action to be brought within one year after her death by her legal representative. It is too late to do that now, and was when this suit was filed.

For the reasons stated the judgment and decree are reversed and the cause remanded with directions to the circuit court to dismiss respondents' bill. All concur.