HESTER M. SANDERS v. JAMES K. SANDERS, Appellant.—No. 40420.—211 S. W. (2d) 468.

Division Two, April 12, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, May 27, 1948.

*John O. Sanders* for appellant.

882

*Royle Ellis* and *Gardner & Gardner* for respondent.

[468] WESTHUES, C.—Plaintiff filed this suit against her husband wherein she asked that a deed be reformed. The trial court entered a decree for plaintiff and defendant appealed.

Plaintiff and defendant were married on September 28, 1940. In December, 1941, they purchased a farm in Barry County, Missouri, for which they paid $7,650. The deed, as it was written, conveyed title to them as an estate by the entirety. In September, 1946, the parties separated and shortly thereafter plaintiff filed this suit to have the deed reformed so as to read that she owned a 6104.04/7650 and defendant 1545.96/7650 share in said farm. The theory of plaintiff's suit is that she paid $6,104.04 of the purchase price and defendant the balance and that it was understood at the time that the deed was to be so written as to protect her interest. It was also plaintiff's theory that her money was invested by the defendant

without her written consent and therefore a resulting trust was created.

There was not much dispute as to the main facts. They will be briefly stated as follows: The farm purchased by the parties was the old home place of plaintiff's parents. It had been lost through fore-closure proceedings and was owned in 1941 by the Amoskeag Savings Bank. The United Service and Research, Inc., with offices at Mem-phis, Tennessee, had the agency for the sale of the farm and plaintiff's parents were anxious for their daughter and her husband to purchase it.. The evidence shows that they gave their daughter substantial financial aid and it also shows beyond any doubt that $6,104.04 of the purchase price was furnished by plaintiff and her parents, the balance being furnished by defendant. Plaintiff's father, who took part in the negotiations for the purchase of the property, went to Memphis, Tennessee, at the time the deal was closed. He there signed a check for $1000, drawn against an account owned by plain-tiff and defendant who had deposited their money in various banks. The deed as originally written had defendant's name as Jimmie Sanders. At defendant's insistence another deed was prepared with defendant's name as James K. Sanders. Other facts will be stated in the course of the discussion of the points of law.

[469] Plaintiff insists that because she did not give her consent in writing to her money being invested, a resulting trust arose in her favor by operation of law. Sec. 3390, R. S. Mo., 1939, Mo. R. S. A., and a number of cases were cited as authority. It was admitted in this case that plaintiff did not give her consent in writing to the investment, but defendant says that was not necessary because plain-tiff herself invested her money and at her request the deed was made to read to herself and her husband thus creating an estate by the entirety. Defendant relies upon the law as tersely stated in the case of Milligan v. Bing, 341 Mo. 648, 108 S. W. (2d) 108, 1. c. 113 (6-8), as follows:

"The purchase price of the farm was $12,600. There is no con-tention that the wife's money paid the entire purchase price. The evidence would amply justify a finding that they jointly invested their money in the farm and directed that it be conveyed to them jointly. If this be true, the wife was as much a buyer as was her husband, and it was immaterial which of them checked the money out of the joint account. The checking out of the funds, and looking after the conveyance, were the mere mechanics of closing the deal after the investment was made. If the wife made her own investment, and the evidence tends strongly to show that she did, then the question of the husband investing her money without her written consent is not an issue in the case."

There is no doubt that plaintiff's father was very active in con-summating the sale in question. It may be said that plaintiff's parents

as well as plaintiff were anxious and willing that plaintiff's money be used as part of the purchase price. In such circumstances there is ground to urge that the rule stated in the Milligan case be applied. In answer to defendant's contention that plaintiff directed the deed to be made as it was, plaintiff in her brief states that she testified, ". . . she did not so direct, but that she informed her husband that she wanted the deed so drawn as to represent the amount of her money which she put into the land." We find this statement supported by the record. When plaintiff was asked what she told her husband when discussing with him how the deed was to be made, she stated she informed him she wanted the deed made, "In such a way that my part of the money I was putting in would be protected—would be represented in the deed." She further testified that she did not examine the deed and that she first learned it was not written as she had requested when she went to a lawyer about her rights after the separation in 1946. The defendant denied that plaintiff asked him to have the deed so written as to protect her rights. Note his evidence:

"Q. Hester told you when it came time to buy this land that her rights had to be protected in the taking of this deed? A. There wasn't anything said about this at all.

"Q. She told you this deed had to be drawn in such a manner that the money she put into it had to show on the face of that deed? A. Wasn't anything said about that at all.

"Q. Nothing said about that? A. That's right.

"Q. You got the deed out of the bank? A. Yes.

"Q. You took it and had it recorded? A. We both did.

"Q. You both did? A. Yes, sir, we did.

"Q. When she asked to have this deed corrected so that her rights would properly appear according to the amount of money she put in it, you didn't do it? A. I wanted to do it.

"Q. Will you now consent for this deed to be corrected so that her rights will properly be protected according to the money she put into it?

"BY MR. SANDERS: I object. That is a matter of law.

"BY MR. ELLIS: It is cross examination.

"BY THE COURT: Sustained."

The record does not reveal when it was that defendant wanted to correct the deed or when plaintiff asked this to be done. However, his willingness to have the deed corrected lends support to to plaintiff's evidence that she in the first instance wanted the deed so worded as to protect her interest. Plaintiff in this case, so the evidence shows, relied much upon her husband in these matters. He deposited the money, [470] wrote the checks and transacted most of the business at the banks. Three checks totaling $6,650, made in payment for the farm, were all signed by the defendant.

Considering the evidence as a whole we conclude that plaintiff willingly invested her money in the farm purchased; that she, through her father, was as much a purchaser of the land as her husband, however, we are also convinced that she wanted the deed so worded as to reveal her share and to protect the same. That being the case the deed should have been so written, and a court of equity treats as done that which ought to have been done. In Frost v. Frost, 200 Mo. 474, 98 S. W. 527, at the instance of a wife a deed was reformed. In Johnston v. Johnston, 173 Mo. 91, 73 S. W. 202, l. c. 210, this court, after reviewing the law stated:

"The result is that, not only in the other jurisdictions referred to, and according to the text writers quoted from, but also by the more recent decisions of this court, an estate by the entirety does not arise, nor does the right of survivorship exist, as to real estate, where the land is purchased by the husband without the wife's express written consent, partly with her separate money and partly with the money of the husband, but the wife will be decreed a resulting trust in the land by a court of equity in the proportion that her money bears to the total purchase price of the land." See also 41 C. J. S. 735, Sec. 251.

Defendant urges that a resulting trust arises by operation of law from the facts in a case, from what the parties do at the time and not from what they say, citing Clubine v. Frazer, 346 Mo. 1, 139 S. W. (2d) 529, l. c. 532 (11-13). This court there stated that a resulting trust must arise from facts existing at the time title to land is acquired. That is precisely the law we are applying to the facts in this case. Plaintiff's money was used to purchase the land and she requested that the deed be written so as to protect her interest. This was not done and therefore a resulting trust came into being. Defendant also cites Purvis v. Harding, 343 Mo. 652, 122 S. W. (2d) 936. That case is not in point. In the first place it is not a suit between husband and wife. In the second place the plaintiff, who asked that a resulting trust be declared, did not furnish any of the purchase money. Haguewood v. Britain, 273 Mo. 89, 199 S. W. 950, was also cited. In that case the wife's heirs sued to have a resulting trust declared where property had been purchased with her money. However, the court there found that the wife had consulted a lawyer, that she herself had purchased the property and directed that the deed be made to herself and her husband, creating an estate by the entirety. We have no such facts in the case now in consideration.

We have carefully considered the case de novo and it is our conclusion that a resulting trust should be declared. The trial court so found and therefore the decree is affirmed. *Bohling* and *Barrett*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.